**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No.  10-cv-01728-WJM-MJW

LUCILLE M. DURAN,
     Plaintiff,

v.

CITY OF MONTE VISTA, a Colorado home rule municipality; and
DONALD VAN WORMER, individually, and in his official capacity as Monte Vista City
Manager,

     Defendants.

---

**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT, DECLINING SUPPLEMENTAL JURISDICTION OVER
STATE LAW CLAIMS, AND DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT AS MOOT**

---

Plaintiff, the former City Clerk for Monte Vista, Colorado, brings this action

against her former employer, the City of Monte Vista (the "City" or "Monte Vista"), and

the Monte Vista City Manager alleging that Plaintiff's employment was unlawfully

terminated after her husband's unsuccessful campaign for Mayor of Monte Vista.

Before the Court are Plaintiff's Motion for Partial Summary Judgment (ECF No. 33) and

Defendants' Motion for Summary Judgment  (ECF No. 42).

For the reasons set forth below, Defendants' Motion for Summary Judgment is

GRANTED IN PART, Plaintiff's Motion for Partial Summary Judgment is DENIED AS

MOOT, and the Court DECLINES to exercise its supplemental jurisdiction over

Plaintiff's remaining state law claims.

## I.  BACKGROUND

### A.    Factual Background

The following facts are taken from the record and, as required by Fed. R. Civ. P. 56, are viewed by the Court in the light most favorable to Plaintiff:

Plaintiff began her employment with Monte Vista in January 1978.  (ECF No. 1 (Comp. ¶ 10.))  In 1994, Plaintiff became the Monte Vista City Clerk, a position she maintained until the date of her job termination, on or about January 19, 2010.  (*Id.*)

Defendant City of Monte Vista is a home rule municipality organized under the laws of the State of Colorado.  (*Id*. ¶ 2.)  Defendant Donald Van Wormer, at all relevant times, was the Monte Vista City Manager.  (*Id*. ¶ 3.)

In 2009, the Monte Vista Clerk's office had two employees – Plaintiff and Deputy City Clerk Rhonda Valdez.  (Dep. of R. Valdez, 50:7-23.)  At some point in 2009, Alisha Reis, the Monte Vista Community Development Director, was asked to conduct an efficiency analysis of the City Clerk's office.  (Efficiency Analysis, Defs'. SJ Mot., attached as Ex. G.)  The resulting efficiency analysis concluded that the City Clerk's office was overstaffed, and recommended that one position be eliminated.  (*Id.*)

Gabriel Duran, Plaintiff's husband, was first elected to the Monte Vista City council in 2005.  (Comp. ¶ 16.)  During the fall of 2009, Mr. Duran ran for Mayor of Monte Vista.  (*Id*. ¶ 15.)  Plaintiff supported her husband's campaign by putting up campaign signs, attending public debates, and generally supporting his run for Mayor.  (Aff. of L. Duran ¶ 10; Dep. Of L. Duran, 99:12-25, 100:14-16, 101:1-21, 102:10-104:10.) Ultimately, however, Mr. Duran lost the mayoral election.  (Comp. ¶ 19.)

On or about January 19, 2010, approximately two and a half months after Mr. Duran lost the mayoral election, Plaintiff was fired as the Monte Vista City Clerk.  (*Id*. at ¶¶ 21, 22.)  Defendant Van Wormer informed Plaintiff that her job was being eliminated as a result of cost-cutting measures instituted by the City.  (*Id*.)  Rhonda Valdez, former Deputy Clerk, subsequently assumed Plaintiff's job responsibilities.  (Aff. of D. Van Wormer ¶ 9.)

## B.    Procedural History

Plaintiff filed her Complaint on July 21, 2010.  (ECF No. 1.)  Plaintiff brings claims against Defendants for: (1) violations of the First and Fourteenth Amendments to the U.S. Constitution, under 42 U.S.C. §1983; (2) violations of Colorado Revised Statues §§ 8-2-102, 8-2-103 and 8-2-108; and (3) interference with contract.  (*Id*.) Plaintiff brings these claims against Defendant City of Monte Vista and against Defendant Van Wormer in his official and individual capacities.  (*Id*.)  Plaintiff alleges that her employment was unlawfully terminated "out of animosity stemming from her husband'[s] running for the Mayoral position with Defendant City of Monte Vista."  (ECF No. 33 at 17.)

On February 23, 2011, Plaintiff filed a Motion for Partial Summary Judgment pursuant to Fed. R. Civ. P. 56 on all of Defendants' affirmative defenses.  (ECF No. 33.) On March 16, 2011, Defendants filed a Response to Plaintiff's Motion for Partial Summary Judgment (ECF No. 35), and on March 31, 2011, Plaintiff filed a Reply in Support of her Motion for Partial Summary Judgment (ECF No. 38).

On May 10, 2011, Defendants filed a Motion for Summary Judgment on all of

Plaintiff's claims.  (ECF No. 42.)  On June 3, 2011, Plaintiff filed a Response to

Defendants' Motion for Summary Judgment (ECF No. 45), and on June 17, 2011,

Defendants filed a Reply in Support of their Motion for Summary Judgment (ECF No.

50).  These Motions are now ripe for resolution.

## II.  LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem*

*Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute

as to a material fact depends upon whether the evidence presents a sufficient

disagreement to require submission to a jury or, conversely, is so one-sided that one

party must prevail as a matter of law.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242,

248-49 (1986); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual

dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a

reasonable juror could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  The

Court must resolve factual ambiguities against the moving party, thus favoring the right

to a trial.  *Quaker State Mini-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527

(10th Cir. 1995); *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

The moving party bears the initial burden of showing an absence of evidence to

support the nonmoving party's case.  *Celotex*, 477 U.S. at 325.  Where the non-movant

bears the burden of proof at trial, the non-movant must then point to specific evidence

establishing a genuine issue of material fact with regard to each challenged element.

*See Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002); *In re Ribozyme Pharms.,*

*Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002).

## III.  ANALYSIS

**A.     Section 1983 Claim based on a Violation of the First Amendment (First Claim)**

Plaintiff brings a Section 1983 claim based on a violation of the First Amendment

alleging that Defendants retaliated against her for engaging in protected political activity

and affiliation.[1]  (Pl. SJ Resp. at 12-15.)  Defendants move for summary judgment on

Plaintiff's First Amendment claim.  (Defs'. SJ Mot. at 9-12.)

### 1.     The *Garcetti/Pickering* analysis

"When a citizen enters government service, the citizen by necessity must accept

certain limitations on his or her freedom."  *Brammer-Hoelter v. Twin Peaks Charter*

*Academy*, 492 F.3d 1192, 1202 (10th Cir. 2007) (quoting *Garcetti v. Ceballos*, 547 U.S.

410, 418 (2006)).  At the same time, "[t]he First Amendment limits the ability of a public

employer to leverage the employment relationship to restrict, incidentally or

---

[1]     Defendants argue that Plaintiff has not properly pled Section 1983 claims. (Defs'. SJ Motion at 12-13.)  Defendants are correct that 42 U.S.C. § 1983 is not the basis for its own claim, but rather is only a vehicle for asserting a violation of federal rights.  *See Graham v. Connor*, 490 U.S. 386, 393-394 (1989) ("As we have said many times, § 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.")  Indeed, Plaintiff's Complaint is confusingly pled.  However, as Plaintiff's Complaint references violations of Plaintiff's First and Fourteenth Amendment rights under Section 1983 (Compl. at 6), the Court liberally construes Plaintiff's Complaint to include within it a claim under 42 U.S.C. § 1983 that Plaintiff's constitutional rights have been violated by Defendants.

intentionally, the liberties employees enjoy in their capacities as private citizens." *Id*.

Consequently, when a government employee speaks on a matter of public concern, he

or she "must face only those speech restrictions that are necessary for their employers

to operate efficiently and effectively." *Id*.; *see also Pickering v. Bd. of Educ.*, 391 U.S.

563, 568 (1968).

Courts in this Circuit apply a five step inquiry, known as the *"Garcetti/Pickering"*

analysis, to determine if a government employee faced "neccessary" free speech

restrictions. *See Brammer-Hoelter*, 492 F.3d at 1202.   First, the Court must determine

whether the employee spoke "pursuant to [his] official duties." *Id*. (quoting *Garcetti*, 547

U.S. at 421).  "If the employee speaks pursuant to his official duties, then there is no

constitutional protection because the restriction on speech 'simply reflects the exercise

of employer control over what the employer itself has commissioned or created.'" *Id*.

"Second, if an employee does not speak pursuant to his official duties, but

instead speaks as a private citizen, the court must determine whether the subject of the

speech is a matter of public concern." *See Brammer-Hoelter*, 492 F.3d at 1202

(internal citations omitted).  "If the speech is not a matter of public concern, then the

speech is unprotected and the inquiry ends." *Id*. at 1203.

"Third, if the employee speaks as a citizen on a matter of public concern, the

court must determine 'whether the employee's interest in commenting on the issue

outweighs the interest of the state as employer.'" *See Brammer-Hoelter*, 492 F.3d at

1203 (quoting *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir.

2007)).

"Fourth, assuming the employee's interest outweighs that of the employer, the employee must show that his speech was a substantial factor or a motivating factor in [a] detrimental employment decision." *See Brammer-Hoelter*, 492 F.3d at 1202 (internal quotations omitted).

Fifth, even if the employee establishes that the protected speech was such a factor, "the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech." *Id.* (internal quotation omitted). "The first three steps are to be resolved by the district court, while the last two are ordinarily for the trier of fact." *Id.* (citing *Cragg v. City of Osawatomie*, 143 F.3d 1343, 1346 (10th Cir. 1998)).

Defendants primarily argue that Plaintiff engaged in no protected political activity or speech whatsoever. (Defs'. SJ Motion at 11.)  According to Defendants, "Plaintiff never campaigned for her husband, went to marches, held signs, participated in rallies or did anything to booster votes for her husband." (*Id.*)  Plaintiff counters that she supported her husband during his Mayoral race by accompanying him to public debates, placing various campaign signs around the City, and generally supporting him in his election efforts. (Pl. SJ Resp. at 14.)  Plaintiff further argues that her political activity was not part of her employment as City Clerk, and was not done pursuant to her official duties. (*Id.*)

"The First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for political office." *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214, 223 (1989).  Moreover, "communication by signs and

posters is virtually pure speech." *Arlington County Republican Committee v. Arlington County, Va.*, 983 F.2d 587, 593 (4th Cir. 1993) (internal citation omitted). Despite Defendants' assertion to the contrary, the record shows that Plaintiff assisted her husband, in some form and at various times, in posting campaign signs and other materials around Monte Vista. (Aff of L. Duran ¶ 10; Dep. of L. Duran, 99:10-25.) Accordingly, the Court finds that Plaintiff's relevant conduct here constituted a form of "speech" that is afforded First Amendment protection. *See Arlington County*, 983 F.2d at 593.

The Court thus turns to the five *"Garcetti/ Pickering"* factors.

### a. *Garcetti/Pickering*: factors one and two

Under the first *Garcetti/Pickering* factor, the Court must determine whether the employee speaks "pursuant to [his] official duties." *See Brammer-Hoelter*, 492 F.3d at 1202. Under the second factor, the Court must determine whether the subject of the speech was a matter of public concern. *Id*.

Speech relating to the viability of a potential candidate and the merits of candidates for office "is at the core of protected speech." *Bass v. Richards*, 308 F.3d 1081, 1089 (10th Cir. 2002). Defendants argue that any speech by Plaintiff about the mayoral election would have been in the course of her employment, as the City Clerk is in charge of municipal elections. (Defs'. SJ Mot. at 10.) Defendants also assert, conversely, that such speech was not matter of public concern, but only involved Plaintiff's internal personal disputes. (*Id.*) Defendants, however, offer no evidence for these opposing contentions. Rather, the record shows that Plaintiff's political activity

supporting her husband was not pursuant to her official duties, and was on a matter of

public concern.  (Compl. ¶ 13; Aff. of L. Duran ¶ 10; Dep. Of L. Duran, 99:12-25,

100:14-16, 101:1-21, 102:10-104:10.)  While Plaintiff's job responsibilities included

monitoring municipal elections, there is no evidence that her official duties included

campaigning for her husband.  (*Id*.)  Moreover, Plaintiff's political activity consisted of

supporting her husband's public campaign for political office.  (*Id*.)  There is no

evidence that her political activity only involved a personal dispute.  Accordingly, the

Court finds that Plaintiff's political activity satisfies the first two factors of the

*Garcetti/Pickering* analysis.  *See Brammer-Hoelter*, 492 F.3d at 1204-05.

### b.  *Garcetti/Pickering*: factor three

Under the third *Garcetti/Pickering* factor, the Court determines whether Plaintiff's

interest in engaging in political activity outweighs the City's interest as her employer.

*See Casey*, 473 F.3d at 1327.  "[T]here is no easy formula for 'weighing' an employee's

First Amendment speech against an employer's interest in an efficient and disciplined

work environment."  *Id*. at 1333.  However, the Court should determine if the employer

"has an efficiency interest which would justify it in restricting the particular speech at

issue."  *Cragg*, 143 F.3d at 1346.  "In performing the balancing, the statement will not

be considered in a vacuum; the manner, time, and place of the employee's expression

are relevant, as is the context in which the dispute arose."  *Rankin v. McPherson*, 483

U.S. 378, 388 (1987).  Pertinent considerations include "whether the statement impairs

discipline by superiors or harmony among co-workers, has a detrimental impact on

close working relationships for which personal loyalty and confidence are necessary, or

impedes the performance of the speaker's duties or interferes with the regular operation

of the enterprise." *Id.* Arguably, "the only public employer interest that can outweigh a

public employee's recognized speech rights is the interest in avoiding direct disruption,

by the speech itself, of the public employer's internal operations and employment

relationships." *Flanagan v. Munger*, 890 F.2d 1557, 1566 (10th Cir. 1989).

Defendants do not argue that their interest as employers outweighs Plaintiff's

First Amendment rights. (Defs'. SJ Motion at 9-12.) Accordingly, the Court may

assume that Plaintiff's interests in free speech outweighs Defendants' interests in

managing their work environment. *See Brammer-Hoelter*, 492 F.3d at 1207; *see also*

*Tran v. Tr. of State Colleges in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("Issues not

raised in the opening brief are deemed abandoned or waived."). Therefore, the Court

considers the third *Garcetti/Pickering* factor as having been conceded by Defendants.

### c. *Garcetti/Pickering*: factor four

Under the fourth *Garcetti/Pickering* factor, Plaintiff bears the burden of showing

that her political activity was a substantial or motivating factor in her employment

termination. *See Cragg*, 143 F.3d at 1346. Defendants argue that there is no evidence

that Plaintiff was fired because of her political activity on behalf of her husband. (Defs'.

SJ Motion at 10-12.) The Court agrees.

Plaintiff argues that "Plaintiff's counsel has not been provided with any

information or evidence that would support the Defendants' alleged defense that

Plaintiff's termination was a result of cost-cutting measures and not in retaliation for

doing that which Mr. Van Wormer could not do while Mr. Duran was working on city

council – terminate Mrs. Duran without notice or cause." (Pl. SJ Resp. at 18.)

Defendants, however, have submitted evidence that Plaintiff's employment was

terminated because of cost-cutting measures. (Efficiency Analysis, Defs'. SJ Mot.,

attached as Ex. G; Aff. of D. Van Wormer ¶ 3, 5, 6, 7; Dep. of D. Van Wormer,

28:4-23.) While Plaintiff may lament the wisdom of firing a employee with over 30 years

of service to her community, the Court does not have the ability to second guess the

City's lawful business decision. *See Beaird v. Seagate Tech, Inc.*, 145 F.3d 1159, 1169

(10th Cir. 1998) (courts may not disturb an employer's *lawful* exercise of business

judgment with respect to layoffs). The central point here, of course, is the lawfulness of

the employer's challenged action. In this context, Plaintiff must put forth some evidence

showing that her political activity was a substantial or motivating factor in her

employment termination, and thus creating a material factual dispute in regards to the

lawfulness of the City's decision to terminate her employment. *See Cragg*, 143 F.3d at

1346. Plaintiff has failed to do so.

Plaintiff also points to Defendant Van Wormer's statements that he wanted to fire

Plaintiff prior to 2010, but could not because her husband was on the City Council, as

proof that she was fired because of her political activity. (Dep. Of M. Sena, 14:14-15:5.)

But Defendant Van Wormer's statement does not support Plaintiff's contention that she

was fired "out of animosity stemming from her husband'[s] running for the Mayoral

position with Defendant City of Monte Vista." (Pl. SJ Motion at 17.) Rather, this

statement only supports the notion that Defendant Van Wormer wanted to fire Plaintiff

well **before** her husband decided to run for mayor and thus, *ipso facto,* before Ms.

Duran ever undertook any actions in furtherance of any such political campaign.

Further, Plaintiff asserts that "[i]t was obvious to me that these individuals [] were

bypassing me to make me feel unwelcomed after my husband announced his Mayoral

candidacy." (Aff. of L. Duran ¶ 16.)  Plaintiff's subjective belief, however, without more,

is not evidence that she was fired because of her political activity.  *See Aramburu v.*

*Boeing Co.*, 112 F.3d 1398, 1408 n.7 (10th Cir. 1997) (subjective beliefs that employer

discriminated against plaintiff are insufficient to preclude summary judgment) (citations

omitted).

As Plaintiff has not shown as genuine dispute of fact as to whether she was fired

due to her political activity, the *Garcetti/Pickering* inquiry ends, and Defendants are

entitled to judgment as a matter of law on Plaintiff's Section 1983 First Amendment

claim.  *See Celotex*, 477 U.S. at 322.

**B.     Section 1983 Claim based on a Violation of the Fourteenth Amendment–Property Interest (Second Claim)**

Plaintiff further alleges that Defendants deprived her of her property interest in

continued employment as the Monte Vista City Clerk in violation of Section 1983 and

the due process clause of the Fourteenth Amendment.  (Pl. SJ Resp. at 20.)

Defendants move for summary judgment on Plaintiff's Section 1983 Fourteenth

Amendment property interest claim.  (Defs'. SJ Mot. at 12-13.)

To determine whether a plaintiff was denied due process under the Fourteenth

Amendment, the Court engages in a two-step inquiry: (1) did the individual possess a

protected interest to which due process protection was applicable; and (2) was the

individual afforded an appropriate level of process. *See Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) (citation omitted). Therefore, to maintain a viable property interest due process claim, Plaintiff must first demonstrate that she had an actual protected property interest. *Id*. "The existence of a property interest is defined by existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits and support claims of entitlement to those benefits." *Id*. (internal citation and quotations omitted); *see also Curtis Ambulance of Fla., Inc. v. Bd. of Cnty. Comm'rs*, 811 F.2d 1371, 1376 (10th Cir. 1987) (citing *Perry v. Sindermann*, 408 U.S. 593, 601 (1972)) (rules or mutually explicit understandings that support a claim of entitlement to the benefit and that may be invoked at a hearing create a protected property benefit).

Here, it is undisputed that Plaintiff, as City Clerk, was an "at-will" employee. (Dep. of L. Duran, 26:1-29:17, 112:25-113:5.) "At-will employees lack a property interest in continued employment." *Darr v. Town of Telluride, Colo*, 495 F.3d 1243, 1252 (10th Cir. 2007) (citing *Bishop v. Wood*, 426 U.S. 341, 345 n.8 (1976)). Under Colorado law, an at-will employee "generally may be discharged at any time without cause or formal procedure." *Id*. (citing *Johnson v. Jefferson County Bd. of Health*, 662 P.2d 463, 471 (Colo. 1983)). "[T]he traditional rule with respect to local government employees has been that: '[L]ocal government employees hold their posts at the pleasure of the proper local government authorities and can be dismissed without cause, in the absence of restrictions or limitations provided by law.'" *Id*. (quoting *Fremont RE-1 Sch. Dist. v. Jacobs*, 737 P.2d 816, 820 (Colo. 1987)).

Plaintiff asserts, without supporting authority, that she received an Employee

Handbook which created an implied contract and a property interest in continued

employment.[2]  (Pl. SJ Resp. at 2-3.)  Plaintiff's argument, however, is unpersuasive as:

(I) she admits that she was an at-will employee, and (ii) the Employee Handbook

specifically includes a disclaimer which unambiguously states that said Handbook does

not create an express or implied contract of employment for any employee.  (Employee

Handbook Acknowledgment Sheet, Defs'. SJ Reply, attached as Ex. 1; Dep. of L.

Duran, 28:3-29:17, 61:9-62:19.)  Therefore, Plaintiff's Employee Handbook does not by

its terms vest a protected property interest in Ms. Duran's favor in the City Clerk

position. *See Darr*, 495 F.3d at 1252.  The Court finds, as a consequence, that Plaintiff,

as an at-will employee, does not have a protected property interest in continued

employment as the Monte Vista City Clerk.

Because Plaintiff does not have a protected property interest in continued

employment as the Monte Vista City Clerk, Defendants are entitled to summary

judgment on Plaintiff's Section 1983 Fourteenth Amendment property interest claim.

**C.    Section 1983 Claim based on a Violation of the Fourteenth
        Amendment–Liberty Interest (Third Claim)**

Plaintiff also alleges that Defendants violated Section 1983 and Plaintiff's

Fourteenth Amendment liberty interest in her familial association by intentionally

interfering with Plaintiff's marriage.  (Pl. SJ Resp. at 18-19.)  Defendants move for

---

[2]      Plaintiff's implied contract argument does not actually appear in the argument section of Plaintiff's Response to Defendant's Motion for Summary Judgment.  The Court, however, addresses this argument so far as it is mentioned in Plaintiff's response to Defendants' statement of material facts.  (Pl. SJ Resp. at 2-3.)

summary judgment on Plaintiff's Section 1983 Fourteenth Amendment liberty interest claim.  (Defs'. SJ Mot. at 13.)

"[T]he familial right of association is properly based on the 'concept of liberty in the Fourteenth Amendment.'"  *Griffin v. Strong*, 983 F.2d 1544, 1547 (10th Cir. 1993) (quoting *Mayo v. Lane*, 867 F.2d 374, 375 (7th Cir. 1989)).  "In classic fourteenth amendment liberty analysis, a determination that a party's constitutional rights have been violated requires 'a balancing [of] liberty interests against the relevant state interests.'"  *Id*. (quoting *Youngberg v. Romeo*, 457 U.S. 307, 321 (1982)).  However, "to rise to the level of a constitutional claim, the defendant must direct his or her statements or conduct at the intimate relationship with knowledge that the statements or conduct will adversely affect that relationship."  *Id*. (internal citation omitted).

Here, Plaintiff alleges that "Defendants intentionally interfered with Plaintiff's marriage by isolating and refusing to speak with her in any productive manner after her husband, Mr. Gabriel Duran, ran for the office of Mayor."  (Pl. SJ Resp. at 19-20.) Plaintiff further alleges that she was "alienated and shunned" as a result of her husband's mayoral campaign.  (*Id*.)

Defendants, however, have submitted evidence directly countering Plaintiff's claims that any Defendant engaged in activity designed to interfere with her marriage. (Dep. of L. Duran, 72:11-24, 73:21-75:6, 80:14-21, 81:15-18, 116:17-118:5, 118:12-17.) Conversely, Plaintiff has offered no evidence that Defendants directed any statements or conduct towards Plaintiff and her marriage with knowledge that such statements or conduct would have an adverse effect on her relationship with her husband.

In short, Plaintiff has presented no evidence which creates a triable issue of fact as to whether Defendants violated Plaintiff's liberty interest.  As such, Defendants are entitled to judgment as a matter of law on Plaintiff's Section 1983 Fourteenth Amendment liberty interest claim.

**D.     Supplemental Jurisdiction Over Plaintiff's Remaining State Law Claims**

Though the issue has not been raised by any party, the Court has an independent duty to examine its jurisdiction at every stage of the litigation.  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  The Court had original jurisdiction over this case because Plaintiff's Section 1983 claims alleged violations of federal law.  (ECF No. 1.)  Because the Court had original jurisdiction over these claims, it also had supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the Plaintiff's two state law claims - violations of C.R.S. §§ 8-2-102, 8-2-103 and 8-2-108, and interference with contract.

This case is now in a fundamentally altered procedural posture given that the Court is herein granting summary judgment to Defendants on all of Plaintiff's federal law claims.  Plaintiff's two remaining claims are grounded in state law.  A federal court does not have independent jurisdiction over state law claims unless those state law claims "turn on substantial questions of federal law."  *Grable & Sons Metal Products, Inc. v. Darue*, 545 U.S. 308, 312 (2005).  None of the state law claims at issue in this case turn on substantial questions of federal law.

Federal supplemental subject matter jurisdiction over state law claims "is extended at the discretion of the court and is not a plaintiff's right."  *TV Commc'ns*

*Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992)

(citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).  "[A] federal court

should consider and weigh in each case, and at every stage of the litigation, the values

of judicial economy, convenience, fairness, and comity in order to decide whether to

exercise jurisdiction over a case brought in that court involving pendent state-law

claims." *Carnegie-Mellon Univ.*, 484 U.S. at 350.  In the interest of comity and

federalism, district courts are advised against making "needless decisions of state law."

*TV Commc'ns Network, Inc.*, 964 F.2d at 1028.  If federal claims are dismissed before

trial, leaving only issues of state law, the federal district court should ordinarily decline

to exercise supplemental jurisdiction by dismissing the case without prejudice.  *Brooks*

*v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (citing *Carnegie-Mellon Univ.*, 484

U.S. at 350).

The instant suit is not yet at trial, so issues of judicial economy and fairness are

not implicated here.  *See Carnegie-Mellon Univ.,* 484 U.S. at 350.  Rather, issues of

comity and federalism are at the forefront, because the Court would have to decide

matters of state law if it continued to exercise jurisdiction over Plaintiff's remaining

claims.  *See McWilliams v. Jefferson County*, 463 F.3d 1113, 1117 (10th Cir. 2006).

"Notions of comity and federalism demand that a state court try its own lawsuits, absent

compelling reasons to the contrary."  *Thatcher Enters. v. Cache County Corp.*, 902 F.2d

1472, 1478 (10th Cir. 1990).  The remaining two causes of action either arise out of

Colorado statutes or are grounded in Colorado common law; no substantial questions

of federal law are implicated by these claims.  Thus, there is no compelling reason to

maintain jurisdiction over this suit.

The Court finds that the remaining claims would be better addressed in state court.  *See Gaenzle*, 614 F.3d at 1229; *TV Commc'ns Network, Inc.*, 964 F.2d at 1028; *Thatcher Enters.*, 902 F.2d at 1478.  Accordingly, the Court declines to exercise its supplemental jurisdiction over Plaintiff's remaining state law claims.

**E.      Plaintiff's Motion for Partial Summary Judgment**

Plaintiff has moved for partial summary judgment on all of Defendants' affirmative defenses.  (ECF No. 33.)  However, as described above, the Court has granted Defendants' Motion for Summary Judgment as to Plaintiff's claims alleging a violation fo federal law, and declined to exercise its supplemental jurisdiction over Plaintiff's remaining state law claims.  As such, Plaintiff's Motion for Partial Summary Judgment is denied as moot.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.      Defendants' Motion for Summary Judgment (ECF No. 42) is GRANTED IN PART;

2.      Defendants' Motion for Summary Judgment as to Plaintiff's Section 1983 First Amendment claim (First Claim) is GRANTED;

3.      Defendants' Motion for Summary Judgment as to Plaintiff's Section 1983 Fourteenth Amendment property interest claim (Second Claim) is GRANTED;

4.      Defendants' Motion for Summary Judgment as to Plaintiff's Section 1983 Fourteenth Amendment liberty interest claim (Third Claim) is GRANTED;

5.      The Court DECLINES to exercise its supplemental jurisdiction over Plaintiff's

remaining state law claims, and these claims are DISMISSED WITHOUT

PREJUDICE; and

6.      Plaintiff's Motion for Partial Summary Judgment (ECF No. 33) is DENIED AS

MOOT.

Dated this 8th day of March, 2012.

BY THE COURT:

William J. Martínez
United States District Judge